# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
J.M. and M.M.,                    :    Civil Action No. 07-2861(NLH)
on behalf of A.M., and           :
J.M. and M.M., individually,     :
                                 :
                                 :    OPINION
          Plaintiffs,            :
                                 :
     v.                          :
                                 :
EAST GREENWICH TOWNSHIP          :
BOARD OF EDUCATION,              :
et al.,                          :
                                 :
          Defendants.            :
```

**APPEARANCES:**

Alan A. Reuter, Esquire
Nash Law Firm LLC
1001 Melrose Avenue
Suite A
Blackwood, NJ 08012

    *Attorney for Plaintiffs*

William S. Donio, Esquire
Cooper Levenson April Niedelman & Wagenheim, P.A.
1125 Atlantic Avenue, Third Floor
Atlantic City, NJ 08401-4891

    *Attorney for Defendants*

**HILLMAN**, District Judge

    This matter has come before the Court on defendants' motion to dismiss certain claims in plaintiffs' complaint.  For the reasons expressed below, defendants' motion will be granted in part and denied in part.

## BACKGROUND

    Plaintiffs, J.M. and M.M., are parents to their son, A.M.,

who at the time of the filing of their complaint was seven years old and a student in the East Greenwich School District.  When A.M. was born, he was diagnosed with Noonan Syndrome, which is a genetic disorder.  A.M. takes medication for a heart condition and he suffers from bilateral severe sensorineural hearing loss.  Plaintiffs state in their complaint that it is "paramount" to them that A.M. is not limited, and they desire that A.M. not be taken out or precluded from a mainstream educational environment.

This lawsuit concerns an Individualized Educational Plan ("IEP") which was developed for A.M. for the 2006-2007 school year.  Plaintiffs claim that defendants violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., by implementing A.M.'s IEP without a proper IEP meeting, and by not considering the parents' wishes for their son.  Plaintiffs claim that the Child Study Team Supervisor, Mary Heade, improperly and unilaterally determined prior to the IEP meeting that A.M. was to be placed either in a self-contained classroom or beginner's kindergarten, without even considering A.M.'s placement in developmental kindergarten, a class in which A.M. was currently enrolled during the afternoon.  Plaintiffs contend that Heade refused to even discuss the option of developmental kindergarten, even though M.M. had raised the issue numerous times.

It appears from the complaint that because plaintiffs

2

objected to the IEP developed for their son, they filed a due process complaint pursuant to the procedures in the IDEA.  It also appears that A.M. did not resume attendance at the Greenwich Township schools, but was instead home schooled.  While being home schooled, plaintiffs requested additional services, such as speech therapy, occupational therapy, and physical therapy from the school district, but plaintiffs claim that these requests were denied.

Based on the foregoing, plaintiffs claim that defendants violated the IDEA (Count I), the Americans with Disabilities Act ("ADA") (Count II), Rehabilitation Act (Count IV), and New Jersey's Law Against Discrimination ("NJLAD") (Count V).  Plaintiffs have brought these claims for direct violations of those laws, as well as pursuant to 42 U.S.C. § 1983 (Count III).  Plaintiffs also claim that defendants created a hostile educational environment (Count VI), breached the duty of good faith and fair dealing (Count VII), participated in a civil conspiracy (Count VIII), and committed the torts of intentional infliction of emotional distress (Count IX) and fraud (Count X).

Defendants have moved to dismiss all of plaintiffs' claims except for their IDEA claim.  Defendants argue that this case is simply about the dispute over the IEP developed for A.M., and all the other claims either have no basis in law or plaintiffs have failed to state any basis for relief.  Furthermore, defendants

3

argue that because this case is essentially an appeal of an Administrative Law Judge's ruling on plaintiffs' due process petition brought pursuant to the IDEA's appeal procedures, this Court lacks subject matter jurisdiction over plaintiffs' other claims. Plaintiffs have opposed defendants' motion.

## DISCUSSION

### A.   Jurisdiction

Plaintiffs have alleged this Court's jurisdiction over their claims based on federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Defendants have challenged the jurisdictional basis for plaintiffs' claims other then their IDEA claim.

### B.   Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead

4

all the facts that serve as a basis for the claim.  <u>Bogosian v. Gulf Oil Corp.</u>, 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  <u>Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)).  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.

5

Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd._, 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

### C.   Analysis

Plaintiffs have advanced claims that can be separated into two categories: 1) the appeal of the ALJ's decision on their due process complaint concerning the IEP developed for A.M. for the 2006-2007 school year; and 2) all other claims arising from the events concerning and arising out of the development of the IEP. Defendants claim that the second category of plaintiffs' claims fall outside the scope of the primary issue, which is whether A.M. has received a free appropriate public education (FAPE). They also argue that those claims, if considered, constitute an impermissible end-run around the limited damages afforded by the IDEA.

Under the IDEA, any aggrieved party may "present a complaint . . . with respect to any matter relating to the identification,

evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6).  The party may elect to have the complaint investigated by the state educational agency, see 34 C.F.R. § 300.661, or avail itself of an "impartial due process hearing," 20 U.S.C. § 1415(f).  Any party aggrieved by the outcome of the due process hearing "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States, without regard to the amount in controversy."  Id. § 1415(i)(2)(A).  This action must be initiated within 90 days from the date of the hearing officer's decision.  Id. § 1415(i)(2)(B).  The district court is authorized to grant "such relief as the court determines is appropriate," including attorneys' fees, reimbursement for a private educational placement, and compensatory education.  See id. § 1415(i)(3)(B)(i).

In reviewing an administrative law judge's decision, a district court must employ a modified version of de novo review. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 269-70 (3d Cir. 2003).  Under this standard, the court "must make its own findings by a preponderance of the evidence," but "must also afford due weight to the ALJ's determination."  Shore Regional High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004).  The Third Circuit has explained that due weight

means that the "factual findings from the administrative proceedings are to be considered *prima facie* correct," so that "if a reviewing court fails to adhere to them, it is obliged to explain why." S.H., 336 F.3d at 271.

A district court is not confined to hearing only those issues ruled upon by the ALJ, however. See Rancocas Valley Reg'l High School, 380 F. Supp. 2d 490, 493 (D.N.J. 2005) (noting that "the language creating subject matter jurisdiction is both explicit and broad"). Even though failure to raise an issue at the administrative level will result in a waiver of the issue in a civil action before a federal district court, "IDEA plaintiffs may raise claims not presented in the state due process hearing if it would have been impossible or futile for them to have done so." S.C. v. Deptford Twp. Bd. of Educ., 213 F. Supp. 2d 452, 456-57 (D.N.J. 2002). Examples of when it would be impossible or futile to bring a claim before the ALJ include,

> [1] where the question presented is purely a legal question (Lester H. by Octavia P. v. Gilhool, 916 F.2d 865, 869-70 (3d Cir. 1990)), [2] where the administrative agency cannot grant relief (Komninos by Komninos v. Upper Saddle River Bd.of Educ., 13 F.3d 775 (3d Cir. 1994)), [3] where 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law,'" (Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1044 (10th Cir. 1993) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 7 (1985))[and] . . . [4] "where plaintiffs allege structural or systemic failure and seek system wide reforms[,]" Romer, 992 F.2d at 1044; see also Beth V. by Yvonne V. v. Carroll, 87 F.3d 80, 89 (3d Cir. 1996).

Grieco v. New Jersey Dept. of Educ., 2007 WL 1876498, *6 (D.N.J. June 27, 2007).

Thus, to determine whether plaintiffs' non-IDEA claims can survive defendants' motion for failure to state a claim, it must also be determined whether they should have been, and could have been, brought before the ALJ.  To do so, each claim must be analyzed.[1]

### 1. Plaintiffs' ADA and Rehabilitation Act claims

Plaintiffs claim that the school district and two individuals--Mary Heade, the Child Study Team Supervisor, and Barbara Harris, a Child Study Team member and case manager--

---

[1]Defendants attach a copy of the ALJ's opinion to their brief, and restate a portion of the ALJ's decision in their brief.  Plaintiffs object to defendants' submission and use of the ALJ's opinion, arguing that it is irrelevant to defendants' motion to dismiss, which must only be based on the face of plaintiffs' complaint.

The Third Circuit has held that although "a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citation omitted).  "'[A] court that examines a transcript of a prior proceeding to find facts converts a motion to dismiss into a motion for summary judgment.'" Id. (citing Southern Cross, 181 F.3d at 427 n.7 (explaining that "[i]t has been suggested that the appropriate analogy is the hearsay rule, which allows an out-of-court statement to be admitted into evidence for purposes other than establishing the truth of the statement")).

The Court finds it premature to convert defendants' motion to one for summary judgment, and as such, aside from acknowledging that an ALJ issued a decision on plaintiffs' IDEA due process claim, the Court is constrained from otherwise considering the ALJ's findings at this time.

violated the ADA by discriminating against A.M., M.M., and J.M. "under the guise of acting under the IDEA and applicable laws." (Compl. ¶ 220.)  Plaintiffs claim that defendants discriminated against them "because of, by virtue of and on the basis of the disabilities of A.M. and thereby violated their rights under Title II" of the ADA by "denying Plaintiffs the benefits of receiving full and equal access to the public education programs and activities offered within the school district, when such access could have been achieved with reasonable accommodations." (Id. ¶ 221.)

In addition to their ADA claims, plaintiffs allege that defendants collectively violated § 504 of the Rehabilitation Act by denying "Plaintiff the benefits of receiving full and equal access to the public education programs and activities offered within the school district, when such access could have been achieved with reasonable accommodations, and by improperly restricting the rights of A.M. and the choices of M.M. and J.M. with respect to the education of A.M."  (Id. ¶ 237.)

Section 12132 of Title II of the ADA provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §

10

12132.  This statement constitutes a general prohibition against discrimination by public entities.  New Directions Treatment Services v. City of Reading, 490 F.3d 293, 301-02 (3d Cir. 2007). Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

The Third Circuit has noted that "[a]s the ADA simply expands the Rehabilitation Act's prohibitions against discrimination into the private sector, Congress has directed that the two acts' judicial and agency standards be harmonized." New Directions, 490 F.3d at 302 (citation omitted).  The Third Circuit has also noted, however, that the ADA and the Rehabilitation Act are not exactly the same, and that the language of these two statutory provisions "regarding the causative link between discrimination and adverse action is significantly dissimilar."  Id. at 301 n.4 (citations omitted).

The Third Circuit has also found that although a party may use the same conduct as the basis for claims under both the IDEA and the Rehabilitation Act, a violation of the IDEA is not a *per se* violation of the Rehabilitation Act, regardless of whether it meets the independent requirements for an Rehabilitation Act

violation.  <u>Andrew M. v. Delaware County Office of Mental Health and Mental Retardation</u>, 490 F.3d 337, 349 (3d Cir. 2007) (stating that even in cases also brought under the IDEA a plaintiff must still prove that there was a violation of the Rehabilitation Act).

Thus, based on these principles, even though the ADA and Rehabilitation Act are very similar, and even though the same conduct may be used to support an ADA and/or Rehabilitation Act claim as used to support an IDEA claim, claims for violations of the ADA, Rehabilitation Act, and IDEA are distinct.  As discussed below, the elements to prove an IDEA claim are different than those to prove an ADA and Rehabilitation Act claim, and the damages available for these claims are also different.[2] Additionally, plaintiffs were not able to bring these claims pursuant to the due process procedures of the IDEA when they

---

[2]Damages available under the Rehabilitation Act and ADA include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract.  <u>See</u> <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791, 804 (3d Cir. 2007).  Punitive damages are not available.  <u>Bowers v. National Collegiate Athletic Ass'n</u>, 346 F.3d 402, 429 (3d Cir. 2003) (citing <u>Barnes v. Gorman</u>, 536 U.S. 181 (2002)).

Even though the Third Circuit has not specifically addressed the issue, it appears that damages available under the IDEA are limited to compensatory education.  <u>Brandon V. v. Chichester School Dist.</u>, 2007 WL 2155722, *3(E.D. Pa. July 25, 2007) (reviewing decisions from other circuits and holding, "The Court agrees with the overwhelming weight of authority that compensatory damages are generally inconsistent with the purpose and statutory scheme of the IDEA, and until the Third Circuit holds otherwise, will not recognize damages as an available form of relief in IDEA actions").

challenged the development of A.M.'s IEP. Consequently, even though defendants may ultimately prove that plaintiffs have not been able to establish these claims, plaintiffs' ADA and Rehabilitation Act claims are not precluded by virtue of plaintiffs' availment of the IDEA due process procedure.[3]

This finding, however, does not address whether these claims can survive defendants' motion to dismiss.  In order to make out a *prima facie* case of disability discrimination under the ADA, a

---

[3]At least one court has found "where the ADA and Rehab Act claims are premised upon violations of the IDEA, the claims are merely derivative and suffer the same fate as the IDEA claim." Emily Z. v. Mt Lebanon School Dist., 2007 WL 3174027, *4 (W.D. Pa. 2007) (citing Melissa S v. School District of Pittsburgh, 183 Fed. Appx. 184, 188 (3d Cir. 2006) (affirming grant of summary judgment where summary judgment was appropriately entered on IDEA claim and where "the allegations underlying the Rehabilitation Act claim do not differ substantively from those underlying the IDEA claim"), quoting Matula, 67 F.3d at 492-93 ("there appears to be few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition"); Falzett v. Pocono Mountain School District, 152 Fed. Appx. 117, 120-21 (3d Cir. 2005) (stating that, "[b]ecause Pocono provided Tiber with a FAPE, the District Court correctly granted Pocono summary judgment on Tiber's claims under the ADA, the Rehabilitation Act, and 42 U.S.C. § 1983"); Derek B. ex rel. Lester B. v. Donegal School District, Civ. No. 6-2402, 2007 WL 136670 at * 13 (E.D. Pa. Jan.12, 2007) (holding that, because the court denied relief under the IDEA, it must also deny relief under § 504); P.G. ex rel. C.B. v. Southern York County School District, 2006 WL 3042966 (M.D. Pa. Oct.24, 2006) (stating that where § 504 and ADA claims are premised upon the same core of operative facts as an IDEA claim, the Commonwealth Court's entry of judgment in favor of the school district on the IDEA claim mandated, on the basis of collateral estoppel, the entry of judgment in favor of the school district on the ADA and Rehab Act claims) and Colon ex rel. Disen-Colon v. Colonial Intermediate Unit 20, 443 F. Supp. 2d 659, 677 (M.D. Pa. 2006)).  That case was decided at the summary judgment stage, however, and is inopposite here.

plaintiff must establish that he (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse action because of that disability.  Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citation omitted).   A plaintiff can prove his Rehabilitation Act claim where "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school."  Andrew M. v. Delaware County Office of Mental Health and Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007) (quoting Ridgewood Board of Education v. N.E., 172 F.3d 238, 253 (3d Cir. 1997)).[4]  Reviewing plaintiffs' allegations against these standards, plaintiffs have adequately pleaded their ADA and Rehabilitation Act claims for the purposes of Rule 12(b)(6).

Despite this, there are several problems with these claims as pleaded by plaintiffs.  First, plaintiffs seeks punitive damages for defendants' alleged ADA and Rehabilitation Act claims.  Punitive damages are not available for these claims.  See Doe v. County of Centre, PA, 242 F.3d 437, 455-58 (3d Cir.

---

[4]Even though the Third Circuit has not specifically addressed the issue, it appears that to prove a Rehabilitation Act claim, a plaintiff must show that the defendant acted with deliberate indifference.  See L.T. v. Mansfield Tp. School Dist., 2007 WL 2332308, *5 (D.N.J. Aug. 10, 2007).

2001) (concluding punitive damages are not available under § 504 of the Rehabilitation Act or Title II of the ADA).

Second, claims against the individual defendants are unavailable for these claims. With regard to the ADA, the Third Circuit has followed other circuit courts of appeals in holding that individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively. <u>Emerson v. Thiel College</u>, 296 F.3d 184, 189 (3d Cir. 2002) (citations omitted).

With regard to the Rehabilitation Act, the Third Circuit has held that if an individual defendant does not receive federal aid, a plaintiff cannot state a claim against him or her under the Rehabilitation Act. <u>See</u> <u>Emerson v. Thiel College</u>, 296 F.3d 184, 190 (3d Cir. 2002). Here, because plaintiffs have not alleged that any of the teachers or administrators receive federal aid, following <u>Emerson</u>, the individual defendants cannot be held liable under Section 504 of the Rehabilitation Act.

Thus, plaintiffs' ADA and Rehabilitation Act claims may proceed past the motion to dismiss stage, except that punitive damages are unavailable and these claims can only be maintained against the Board of Education.

###    2.    Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983

Plaintiffs have asserted a separate cause of action against defendants pursuant to 42 U.S.C. § 1983. As a primary matter, §

1983 does not create any new substantive rights, but it provides a remedy for the violation of a federal constitutional or statutory right conferred elsewhere.  Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2001) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  To the extent that plaintiffs are bringing their IDEA, ADA, and Rehabilitation Act claims pursuant to § 1983, the Third Circuit has recently clarified that this is improper.  In A.W. v. Jersey City Public Schools, 486 F.3d 791, 803, 805 (3d Cir. 2007), the Third Circuit held that § 1983 is not available to provide a remedy for defendants' alleged violations under the IDEA or Section 504.  Even though the A.W. court did not address whether the prohibition applies to ADA claims brought pursuant to § 1983, because the ADA, as noted above, is the public analogue of the Rehabilitation Act, it is clear that this prohibition with regard to the IDEA and the Rehabilitation Act is applicable to the ADA as well.  See Woodruff v. Hamilton Tp. Public Schools, 2007 WL 1876491, *4 (D.N.J. June 26, 2007).

To the extent that plaintiffs have attempted to bring any of their other claims under § 1983, plaintiffs cannot do so. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges or immunities secured by the Constitution or laws of the United States."  42 U.S.C. § 1983.  Plaintiffs have not alleged any constitutional violation claims, or claims

16

arising under any other federal law.[5]  Consequently, even though claims brought pursuant to § 1983 may not be deemed waived because they did not bring them before the ALJ during the IDEA due process hearing, these claims must be dismissed pursuant to Rule 12(b)(6).

### 3.  Plaintiffs' NJLAD and Hostile Educational Environment claims

Plaintiffs claim that "Defendants, including Heade and Harris, . . . fraudulently and with actual malice and through willful misconduct violated the LAD by discriminating against plaintiffs."  (Compl. ¶ 243.)  Plaintiffs also claim that "Defendants, including Heade and Harris, have maliciously, fraudulently and through willful misconduct and malicious intent subjected A.M., M.M. and J.M. to unwelcome, unjustified and illegal harassment."  (Id. ¶ 250.)  With regard to their harassment claim, plaintiffs claim that defendants used their "authority and obligations" under the IDEA to create a hostile, abusive and inflexible environment for them, and that this harassment has been so pervasive, it has altered the conditions of A.M.'s education.  (Id. § 257.)

---

[5]Even if plaintiffs did assert additional valid claims pursuant to § 1983, those claims would be dismissed against the individual defendants, because although plaintiffs have sued the individual plaintiffs in their official capacities, claims against school administrators or teachers in their official capacities is duplicative of claims against the school.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).

First it must then be determined whether these claims are of the type that could have, and should have, been brought before the ALJ in plaintiffs' due process hearing.  If not, it must then be determined whether plaintiffs have asserted valid claims under the NJLAD and for hostile educational environment.

### 1)   *Whether plaintiffs' NJLAD and hostile environment claims could have or should have been brought before the ALJ*

As a primary matter, there is no independent cause of action for hostile educational environment.  To the extent that such a claim may exist, it has been interpreted as a claim arising under the NJLAD.  See, e.g., Woodruff v. Hamilton Tp. Public Schools, 2007 WL 1876491, *4 (D.N.J. June 26, 2007) (recognizing that plaintiffs pleaded a novel theory of law for hostile educational environment claim under the NJLAD).  Thus, the Court's analysis of plaintiffs' hostile environment claim must be considered as part of the analysis of plaintiffs' NJLAD claim.

The NJLAD provides,

All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments, subject only to conditions and limitations applicable alike to all persons.  This opportunity is recognized as and declared to be a civil right.

N.J. Stat. Ann. 10:5-4.  Damages available under the NJLAD
include compensatory and punitive relief.  See N.J. Stat. Ann.
10:5-13 ("All remedies available in common law tort actions shall
be available to prevailing plaintiffs."); Lehmann v. Toys R Us,
Inc., 32 626 A.2d 445, 461 (N.J. 1993) (recognizing right to both
compensatory and punitive damages under NJLAD).  "[I]n
adjudicating cases brought under the ADA and NJLAD, courts apply
the burden-shifting framework applicable to cases brought under
Title VII," Marzano v. Computer Science Corp. Inc., 91 F.3d 497,
502 (3d Cir. 1996), and therefore, the ADA and NJLAD claims are
governed by the same standards, Lawrence v. National Westminster
Bank New Jersey, 98 F.3d 61, 70 (3d Cr. 1996) (citing Ensslin v.
Township of North Bergen, 646 A.2d 452, 458-59 (N.J. Super. Ct.
App. Div.1994), cert. denied, 663 A.2d 1354 (N.J. 1995)); see
also Morales-Evans v. Administrative Office of the Courts of New
Jersey, 102 F. Supp. 2d 577, 586 (D.N.J. 2000) (noting that the
NJLAD is the state version of the federal Title VII of the Civil
Rights Act).

    Based on these standards, plaintiffs' NJLAD claims could not
have been brought before the ALJ: (1) the elements to prove an
IDEA claim are different than those to prove an NJLAD claim, (2)
the damages available for these claims are different, and (3)
plaintiffs were not able to bring these claims pursuant to the
due process procedures of the IDEA when they challenged the

development of A.M.'s IEP.

### 2)   *Whether plaintiffs have stated viable NJLAD claims*

With regard to defendants' motion to dismiss plaintiffs'
general NJLAD claim for failure to state a claim, defendants
argue that the NJLAD claim could result in the potential recovery
of the very type of damages that the federal courts have
prohibited in the context of IDEA, ADA, and Rehabilitation Act
claims brought pursuant to those statutes, as well as pursuant to
§ 1983.  In other words, defendants argue that because punitive
damages are not available for claims under the ADA,
Rehabilitation Act, or IDEA, plaintiffs's NJLAD claims must be
dismissed because punitive damages are available under the NJLAD.

Defendants' argument is unavailing.  First, the fact that
there are no punitive damages available under the ADA,
Rehabilitation Act, or IDEA does not mean that a plaintiff who
has successfully proven an ADA, Rehabilitation Act, and/or IDEA
claim as well as a NJALD claim is not entitled to all the damages
available under each statute.  Second, although it is true that a
plaintiff cannot bring IDEA, ADA, and Rehabilitation Act claims
pursuant to § 1983, the reason for that prohibition cannot be
automatically extended to plaintiffs' NJLAD claims.  The Third
Circuit prohibited the use of § 1983 to bring IDEA, ADA, and
Rehabilitation Act claims because the court found that Congress
intended those statues to supplant § 1983.  See A.W. v. Jersey

<u>City Public Schools</u>, 486 F.3d 791 (3d Cir. 2007).  In so finding, the Third Circuit did not say that bringing those claims pursuant to § 1983 was barred because § 1983 allows for punitive damages, while the IDEA, ADA, and Rehabilitation Act do not.

Even though by virtue of prohibiting a plaintiff from bringing IDEA, ADA, and Rehabilitation Act claims pursuant to § 1983, the Third Circuit effectively eliminated the availability of punitive damages for violations of those statutes, streamlining damages was not the basis for the Third Circuit's decision.  Indeed, as noted above, the ADA and Rehabilitation Act allow for money damages, while the IDEA has been interpreted to only allow for compensatory education.  Accordingly, this Court cannot deny plaintiffs the damages available under the NJLAD simply because the IDEA, ADA and Rehabilitation Act do not afford the same type of damages.[6]

With regard to plaintiffs' hostile environment claim, most hostile environment claims arise in the employment context. Generally, to state a hostile environment claim under the NJLAD, a plaintiff must show that the complained-of conduct: (1) would not have occurred but for his race, creed, color, national origin, ancestry, age, marital status, affectional or sexual

---

[6]The Court also notes that the <u>A.W.</u> court's interpretation of § 1983 law does not preclude this Court, when properly exercising supplemental jurisdiction, from granting remedies based on state law that exceed the scope of remedies available under similar federal laws.

21

orientation, familial status, disability, nationality, sex, gender identity; and it was (2) severe or pervasive enough to make a (3) reasonable, similarly-situated person believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.  Id. (citation omitted).

Plaintiffs apparently wish to extend this standard to the education environment.  As noted above, this Court in Woodruff v. Hamilton Twp. Public Schools, 2007 WL 1876491, *4 (D.N.J. June 26, 2007) recognized in that case that the plaintiffs pleaded a novel theory of law for a hostile educational environment claim under the NJLAD, and consequently did not dismiss that claim pursuant to the defendants' Rule 12(b)(6) motion.  Defendants argue that the facts as pleaded by the plaintiffs in Woodruff are completely dissimilar to the facts pleaded by plaintiffs here, and as such, plaintiffs should not be permitted to assert such a cause of action.  Plaintiffs argue that they have sufficiently pleaded a claim such that it should proceed past the motion to dismiss stage.

Defendants' argument is not persuasive at this time. Plaintiffs claim that defendants' alleged harassment of them was severe and pervasive, was motivated by A.M.'s disability, and created an abusive educational and learning environment. Plaintiffs allege a series of events, and if they are accepted as true, they set forth allegations sufficient to satisfy

plaintiffs' requirement to give the defendants fair notice of what their claims are and the grounds upon which they rest.  Even though plaintiffs may not ultimately be able to prove such a claim, the issue on a Rule 12(b)(6) motion is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (citation omitted).  Plaintiffs' pleading is sufficient to allow them to offer evidence to support this claim.  Consequently, plaintiffs's general NJLAD claim and hostile educational environment claim under the NJLAD survive defendants' motion to dismiss.[7]

### 4. Plaintiffs's Breach of the Duty of Good Faith and Fair Dealing Claim

---

[7]Plaintiffs' NJLAD claims against the individual defendants may stand as well.  The NJLAD prohibits unlawful employment practices by an "employer," as that term is defined under the law. Tarr v. Ciasulli, 853 A.2d 921, 927-28 (N.J. 2004).  Although a person in a supervisory capacity is not an "employer" under the NJLAD, an individual may nevertheless be liable under N.J.S.A. 10:5-12(e) if he "aids or abets" others (namely, an employer) in committing acts forbidden by the law.  Hurley v. Atlantic City Police Dept., 174 F.3d 95, 126 (3d Cir. 1999); Tarr, 853 A.2d at 928-29.  The Third Circuit has stated that "employee aids and abets a violation of the [NJ]LAD when he knowingly gives substantial assistance or encouragement to the unlawful conduct of his employer." Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir.1998).  Further, the Third Circuit has found that a supervisor "may be liable as an aider and abettor for active harassment or knowing and willful inaction" under the NJLAD.  Hurley, 174 F.3d at 128.  Thus, if the Court were to find that plaintiffs have proven a valid hostile educational environment claim, by analogy to the employment context, plaintiffs may maintain this claim against the individual defendants.

Plaintiffs claim that defendants "Heade and Harris, as educators responsible for the welfare of A.M., M.M. and J.M., and who are compensated with the tax dollars of M.M. and J.M., are charged with the obligation to and employed to educate A.M., owe a duty of good faith and fair dealing to A.M., M.M. and J.M." (Compl. ¶ 262.)  Plaintiffs also claim that the other defendants are liable for the actions of Heade and Harris under the principles of respondeat superior.  (Id. ¶ 266.)

This claim must be dismissed.  The covenant of good faith and fair dealing is implied in every contract in New Jersey; thus, it is axiomatic that a contract must exist between two parties before a court will infer this covenant.  Space v. BRPM Towing Service, Inc., 2007 WL 4570157, *6 (D.N.J. 2007) (citing Wade v. Kessler Inst., 778 A.2d 580, 584 (N.J. Super. Ct. App. Div. 2001) (stating that "[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing")) (other citations omitted).  Any contention that a breach of the implied covenant may arise absent an express or implied contract finds no support in New Jersey case law.  Id.

Here, plaintiffs appear to assert that a contract exists between them and defendants Heade and Harris because plaintiffs pay taxes, and part of those taxes go toward paying their

salaries.[8]  This tenuous connection does not constitute a
contract between plaintiffs and defendants.  Consequently,
because there is no contract between the parties, the duty of
good faith and fair dealing does not apply.

**5.   Plaintiffs' Intentional Infliction of Emotional
      Distress Claim**

Plaintiffs claim that defendants Heade and Harris
intentionally inflicted upon them severe emotional distress
during the development of A.M.'s IEP.  (Compl. ¶ 272-73.)   This
claim must be dismissed as well.

The New Jersey Supreme Court has explained the standard for
an IIED claim.

> [T]o establish a claim for intentional infliction of
> emotional distress, a plaintiff must establish
> intentional and outrageous conduct by the defendant,
> proximate cause, and distress that is severe.
> Initially, the plaintiff must prove that the defendant
> acted intentionally or recklessly.  For an intentional
> act to result in liability, the defendant must intend
> both to do the act and to produce emotional distress.
> Liability will also attach when the defendant acts
> recklessly in deliberate disregard of a high degree of
> probability that emotional distress will follow.
>
> Second, the defendant's conduct must be extreme and
> outrageous. The conduct must be so outrageous in
> character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized
> community.  Third, the defendant's actions must have
> been the proximate cause of the plaintiff's emotional

---

[8]If plaintiffs are trying to allege that defendants had a
general duty to act in good faith while formulating and
implementing A.M.'s IEP, that is a claim for a violation of the
IDEA, and cannot stand alone as a separate cause of action.

distress.  Fourth, the emotional distress suffered by
the plaintiff must be "so severe that no reasonable man
could be expected to endure it." By circumscribing the
cause of action with an elevated threshold for
liability and damages, courts have authorized
legitimate claims while eliminating those that should
not be compensable.

Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J.

1988) (internal citations and quotations omitted).

There are several problems with plaintiffs' IIED claim.  One

problem is that plaintiffs' allegations do not evidence that

Heade or Harris acted "recklessly in deliberate disregard of a

high degree of probability that emotional distress will follow."

This defect corresponds to the fact that none of the alleged

conduct of Heade or Harris can be described as "outrageous in

character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community."  Plaintiffs' claims relate

to the development of A.M.'s IEP, and the dispute over whether

A.M. should be in a self-contained classroom and/or which level

of kindergarten class.  Even if Heade or Harris violated the IDEA

with regard to their methods of determining A.M.'s IEP, none of

that conduct as alleged by plaintiffs rises to the level of going

"beyond the bounds of decency."

Another problem with plaintiffs' IIED claim is that

plaintiffs have failed to specifically articulate the emotional

distress they suffered, and any distress that they have

26

articulated is not "so severe that no reasonable man could be
expected to endure it."  Plaintiffs make a conclusory statement
that they suffered severe emotional distress, but they do not
indicate how each of them has suffered.  Plaintiffs' bald
assertions are insufficient to survive a motion to dismiss.
Accordingly, because of these defects in plaintiffs' IIED claim,
it must be dismissed.

### 6.  Fraud Claim

Plaintiffs claim that defendants "Heade and Harris, by their
conduct, defrauded A.M., M.M. and J.M. in his educational rights,
protection and benefits to which he was and is entitled."
(Compl. ¶ 275.)  Plaintiffs further claim that Heade and Harris
"acted maliciously and with fraudulent intent and their actions
constitute willful misconduct."  (Id. ¶ 276.)  As with
plaintiffs' good faith and fair dealing and IIED claims, this
claim must be dismissed as well.

The five elements of common law fraud are: (1) a material
misrepresentation of a presently existing or past fact; (2)
knowledge or belief by the defendant of its falsity; (3) an
intention that the other person rely on it; (4) reasonable
reliance thereon by the other person; and (5) resulting damages.
Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997).
Corollary to that standard, the Federal Rules of Civil Procedure
provide, "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake.
Malice, intent, knowledge, and other conditions of a person's
mind may be alleged generally."  Fed. R. Civ. P. 9(h).

Plaintiffs have failed to meet both standards.  Plaintiffs
have not alleged how Heade or Harris knowingly misrepresented a
fact, and intended either A.M., J.M. or M.M. to rely on that
fact.  Indeed, the opposite is true as alleged by plaintiffs.
Plaintiffs claim that Heade made up her mind prior to the IEP
meeting not to place A.M. in developmental kindergarten.
Plaintiffs do not allege that Heade misrepresented her intentions
for A.M.'s placement in order to induce the parents to sign the
IEP.  Instead, the parents were well aware of Heade's opinions,
which Harris agreed with.  They disputed those opinions, and they
refused to sign the IEP.  This difference of opinion as to A.M.'s
placement, and the way the IEP was implemented, may state a claim
under the IDEA, but it does not rise to the level of fraud.

### 7.   Plaintiffs's Civil Conspiracy Claim

Plaintiffs claim that Heade and Harris "with malicious and
fraudulent intent, and willfully, agreed between themselves to
and did discriminate against A.M., M.M. and J.M. and violate and
abuse the IDEA and applicable laws for their own benefit and to
the detriment of A.M., M.M. and J.M. and with disregard for the
rights and welfare of Plaintiffs."  (Compl. ¶ 269.)  Plaintiffs

claim that this harmed them, and constitutes an unlawful civil conspiracy.  (Id. ¶ 270.)

This claim must be dismissed because it is simply plaintiffs' IDEA claim recast as an alleged civil conspiracy. Plaintiffs' entire complaint centers around plaintiffs' claims that defendants did not properly prepare and implement an IEP for A.M.  This alleged conduct may be enough to state a claim under the IDEA, as well as the ADA, Rehabilitation Act and NJLAD, but it cannot also form the basis for a civil conspiracy.

"A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to injure another, and an overt act that results in damage." Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985 (N.J. Ct. App. Div. 1993) (quotations and citations omitted).  The primary requirement for a civil conspiracy is the existence of a separate underlying tort.  In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 789 (3d Cir. 1999).  A plaintiff "cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant."  Id. "Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor."  Id. (internal quotations and citations omitted)).

As a primary matter, this conspiracy claim must fail because plaintiffs have not alleged a viable tort claim against any of the defendants.  Without an actionable tort committed by one defendant, none of the other defendants can be held to have conspired to commit that tort.

This claim must also fail because plaintiffs have not alleged that all the defendants, or even some of the defendants, had an agreement to injure A.M. or his parents.  The fact that defendants collaborated in the development of A.M.'s educational plan, which the parents ultimately objected to, does not automatically create a conspiracy to harm plaintiffs.  Rather, working collaboratively is a requirement of the IDEA, and failure to do so constitutes a violation.  Indeed, plaintiffs complain that the IDEA requires the educational team to work collaboratively with the parents, and not just with each other.

Consequently, plaintiffs' civil conspiracy claim must be dismissed.  To hold otherwise would open the door for every IDEA plaintiff to assert a civil conspiracy claim as well.

### CONCLUSION

Based on the foregoing, defendants' motion to dismiss must be granted as to plaintiffs' § 1983 claims, and their claims for the breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, fraud and civil conspiracy.  Plaintiffs' IDEA, ADA, Rehabilitation Act, and NJLAD

claims may proceed, except that plaintiffs' ADA and
Rehabilitation Act claims are dismissed as to the individual
defendants.  An appropriate Order will be entered.

Dated: March 25, 2008            s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.